**CASE No.  21-1360**

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JASON WRIGHT,

    Plaintiff-Appellant,

    v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

    Defendant-Appellee.

---

On Appeal from the United States District Court
For the District of Colorado
The Honorable Judge Daniel Domenico
Civil Action No. 1:21-cv-02319

---

**EMERGENCY MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF ON
APPEAL OF 10/15/21 U.S. DISTRICT COURT
DENIAL OF EMERGENCY MOTION FOR
PRELIMINARY INJUNCTION**

---

Respectfully submitted,

ERIC H. MAXFIELD
Eric Maxfield Law, LLC
3223 Arapahoe Ave. Suite 300
Boulder, Colorado 80303
(303) 502-7849
eric@ericmaxfieldlaw.com

October 19, 2021

Oral Argument is not requested and there are no prior or related appeals.

Eric Maxfield Law, LLC, by undersigned counsel Eric H. Maxfield, on behalf of Jason Wright, plaintiff-appellant, for his emergency motion for preliminary injunction states:

## STATEMENT OF JURISDICTION

The United States District Court for the District of Colorado has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for Mr. Wright's Americans with Disabilities Act claim under 42 U.S.C. § 12101, *et. seq*. as amended. Mr. Wright filed an emergency motion for preliminary injunction under F.R.C.P. 65 seeking that the court order the provision of testing accommodations on October 22 and 26, 2021, and thereafter, from defendant-appellee National Board of Medical Examiners (NBME) in its administration of the United States Medical Licensing Examination (USMLE) Step 3 test, a prerequisite for medical licensure.

The U.S. District Court Honorable Judge Daniel Domenico issued an Order denying the motion on October 15, 2021. A notice of appeal is timely filed today, October 18, 2021 in accordance with Rule 4(b)(1) F.R.A.P. This appellate court's jurisdiction derives from 28 U.S.C. § 1292(a)(1).

Rule 8.2 **CERTIFICATION ON TIMING**: Undersigned counsel certifies that Mr. Wright's emergency brief is filed as soon as practically possible following issuance by the U.S. District Court of an Order denying his motion for preliminary injunction.

2

Rule 8.2 Identification of Defendant-Appellant's counsel with phone and email addresses:

Perkins Coie, LLP:
Robert Burgoyne, Esq.
202.654.1744
RBurgoyne@perkinscoie.com

Lindsey Erin Dunn, Esq.
303.291.2346
LDunn@perkinscoie.com

## BACKGROUND AND EMERGENCY NATURE OF MOTION

Mr. Wright has brought an action against the Defendant National Board of Medical Examiners (NBME) for violation of the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101, *et seq.* Mr. Wright, an individual with disabilities, has requested appropriate testing accommodations when taking the United States Medical Licensing Exam (USMLE) Step 3 test, which is prepared and administered by the NBME. Mr. Wright has disabilities that affect his reading, the speed at which he reads and the processing of information, and he needs the accommodation of 50% extended time, a distraction limited testing environment and extra or extended breaks on the USMLE Step 3 test, in order to best ensure that the results of the test reflect his achievement level and not his disability.

Mr. Wright is an intelligent person who has struggled throughout his entire academic career with reading, especially reading comprehension under timed circumstances. Dr. Lucero Assessments Document 8-4 p. 14, 30; Mr. Wright Declaration Document 8-2 p. 4-13. Given additional time, a distraction limited environment and

extended breaks, he is brought up to par with other test takers, including on tests like the USMLE Step 3. More critically, he is able to demonstrate the requisite knowledge to practice medicine. Despite extensive documentation demonstrating his disabilities and need for accommodation, including comprehensive assessment by Dr. Terri Lucero, Ph.D. and the University of Denver's approval of extra time for testing, the NBME has denied Mr. Wright's repeated requests. The ADA prohibits public accommodations such as the NBME from discriminating against people with disabilities in the administration of examinations such as the USMLE Step 3 test. 42 U.S.C. § 12189.

Mr. Wright has already taken the USMLE Step 3 three times without accommodation and failed each of these times due to limitations presented by his disabilities. If Mr. Wright takes the exam on October 22 and 26, 2021 and fails, the NBME will not permit him, under a new policy adopted July 1, 2021, to take the test a fifth time. https://www.usmle.org/common-questions/attempt-limit (site last visited 10/18/21). Related to the urgency of this attempt, if Mr. Wright fails on this attempt, he will need to petition the Colorado Medical Board to exempt him from a requirement that he complete testing within ten years from his first USMLE sitting in November of 2011. 3 CCR 713-17: 17.2(D)(1), (2); Declaration of Mr. Wright Document 8-2 p. 14. If the NBME denies Mr. Wright the opportunity to take the USMLE Step 3 exam after a fourth failed attempt, he will be forever barred from becoming a practicing physician. Likewise, if the Board denies a petition for an exception to the ten-year requirement, Mr. Wright will be forever barred from becoming a physician in Colorado, his home state. If the Board grants the petition, Mr. Wright requires the benefit of testing accommodations on a

subsequent test so that he may demonstrate his qualifications.

Mr. Wright must take the USMLE Step 3 test on October 22 and 26, 2021, and because of extreme prejudice resulting in irreparable harm that Mr. Wright will suffer if he is not appropriately accommodated on this sitting of the USMLE Step 3 test, he seeks an order from the Court granting his motion to compel the Defendant-Appellee NBME to provide the requested accommodations.

## FACTS

Mr. Wright has a medical doctorate (M.D.) degree, obtained on March 31, 2014 from Ross University School of Medicine. Declaration of Mr. Wright Document 8-2 p. 12. Mr. Wright's goal is to become a licensed medical doctor in Colorado. Declaration of Mr. Wright Document 8-2 p. 10. Mr. Wright has, according to licensed neuropsychologist Dr. Terri Lucero, Ph.D., under the Diagnostic Statistical Manual of Mental Disorders, V, Specific Learning Disorder, with Impairment in Reading; Attention Deficit/Hyperactivity Disorder, Inattentive Type, Mild; and Other Specified Depressive Disorder. Dr. Lucero Assessment Document 8-4 p. 29-31. Mr. Wright's disorders cause him to have a substantial and significant limitation on his cognitive abilities, resulting in significant impairment in reading, significantly impacting his reading fluency and reading comprehension on timed tasks such as timed tests.  Id.

Dr. Lucero's comprehensive assessment revealed the following key findings regarding Mr. Wright's performance (Dr. Lucero Assessment Document 8-4 p. 29-31):

• His Reading Rate, as measured by the Nelson Denny Reading Test was at the 3rd percentile compared to his peers.

• There was an obvious difference in his performance on untimed reading tasks on the WIAT-4 and timed reading tasks on the WIAT-4 and NDRT, particularly when the reading involved longer passages to answer comprehension questions. Specifically:

 o His performance on the timed WIAT-4 Oral Reading Fluency task was at the 30th percentile, and substantially weaker than his untimed Reading Comprehension performance (75th percentile).

 o On the Nelson-Denny Reading Test, his Reading Comprehension was below average and fell at the 12th percentile when the test was administered with the standard time limit. His performance rose to the average range at the 68th percentile under the Extended Time condition.

• On the WIAT-4 his reading scores were well below what would be expected of someone with superior verbal reasoning skills. His reading accuracy was only at the 25th percentile, indicating he made several mistakes while reading passages. Such mistakes likely lead to decreased efficiency during test taking and possibly a tendency to misunderstand what is being asked of him.

Dr. Lucero is a Colorado licensed clinical psychologist, a Ph.D. and a neuropsychologist. Dr. Lucero Assessment Document 8-4 p. 32. She earned her M.S. and Ph.D. in Clinical Psychology from Auburn University, has been a Colorado licensed psychologist since 1999, and has been providing psychoeducational, psychological, and neuropsychological assessment services for over 20 years.

https://peakgifted2e.com/gifted-2e-specialists/terri-lucero-psychologist-denver/ (last visited 10/18/2021).

According to Dr. Lucero, Mr. Wright needs accommodations on timed tests in order to fully and equally participate in a way that accurately reflects his skill and knowledge:

1. Extended Time – It is recommended that Dr. Wright be allowed Time and a Half on all portions of testing in order to produce a performance on testing that is commensurate with his cognitive and academic abilities, and his practical skills in medical care. An evaluation of his performance on timed versus untimed reading comprehension tasks (summarized by Dr. Lucero) revealed that he has a reading rate that is substantially below average and that his reading comprehension is consistently compromised under timed conditions.

2. Separate Quiet Environment – Dr. Wright's ADHD, despite treatment with stimulant medication, leaves him susceptible to being distracted by environmental cues and will do best if allowed to take tests in a separate, quiet environment free from typical distractions of the standard classroom or testing setting.

3. Additional, Stop-the-Clock or Extended Breaks – The extra time and effort needed to complete reading tasks can be quite draining and cause fatigue that may further negatively impact Mr. Wright's performance. He would benefit from being allowed to take extra, stop-the-clock or extended breaks during testing.

Dr. Lucero Assessment Document 8-4 p. 31-32.

**PASSAGE OF THE USMLE STEP 3 EXAM IS A PREREQUISIT TO MEDICAL LICENSURE.**

The USMLE is a series of standardized examinations used to determine eligibility for medical licensure. Order Document 15 p. 1. Together with the Federation of State Medical Boards, NBME sponsors the USMLE program, and it administers the USMLE through a third-party vendor. Id, NBME denial letter Document 8-4 p. 84. All three Steps of the USMLE must be passed before an individual with a medical doctor (M.D.) degree is eligible to apply for an unrestricted license to practice medicine in Colorado. Order Document 15 p. 1.

The USMLE Step 3 test is a two-day examination. (https://www.usmle.org/pdfs/step-3/Step3_content.pdf at p. 3) (site last visited 10/18/2021). The first day of testing includes 232 multiple-choice items. Id. The second day of testing includes 180 multiple-choice items. Id.

**DEFENDANT-APPELLANT NBME DENIED TESTING ACCOMMODATION REQUESTS TWO TIMES.**

After failing the USMLE Step 3 two times, in 2017 Mr. Wright sought assessment of what he perceived to be his difficulty in taking the timed standardized test. Declaration of Mr. Wright Document 8-2 p. 18. He was assessed by Dr. Terri Lucero, Ph.D., and she diagnosed Mr. Wright with Specific Learning Disorder, with impairment in reading comprehension. Dr. Lucero Assessment Document 8-4 p. 14. The NBME determined, through its Disability Assessment analyst Lucia McGeehan, Ph.D., that Mr. Wright did not have a substantial limitation of a major life activity and denied his 2018 request for accommodation. NBME Denial Document 8-4 p. 83-84. Mr. Wright again took, and for the third time failed, the USMLE Step 3 test. Declaration of Mr. Wright Document 8-2 p. 25.

On March 29, 2021 Mr. Wright provided NBME with documentation of prior approval of testing accommodations of 50% additional time, by the University of Denver. Id. Mr. Wright likewise provided the NBME with the updated comprehensive assessment of Dr. Terri Lucero, Ph.D., dated January 23, 2021, in support of her diagnoses of Mr. Wright, including Specific Learning Disorder, with impairment in reading comprehension, and, additionally, ADHD (attention deficit disorder), along with her

opinion of his substantial limitations, and her opinion of his need for testing

accommodations. Id. The documentation provided by Mr. Wright in support of his

request for accommodations is the type of documentation called for by NBME's written

accommodation policies. See https://www.usmle.org/step-exams/test-

accommodations/guidelines (site last visited 10/18/2021). Dr. Lucero complied with the

NBME's guidelines for provision of information for individuals with a learning

disability, using a battery of tests, including the Nelson-Denny Reading Test (NDRT) and

Wide Range Achievement Test (WRAT). https://www.usmle.org/step-exams/test-

accommodations/guidelines (site last visited 10/18/2021).  In spite of this provision of

demonstrated need for testing accommodations and the NBME's affirmative direction to

those seeking accommodation that they may rely on certain combinations of tests, the

NBME relied on its expert's criticism of these tests and denied Mr. Wright's requested

accommodations. NBME denial Document 8-4 p. 84. The district court compounded the

error by declining to defer to the conclusions of the only professional who examined Mr.

Wright about his below average results on these tests. Order, Document 15 p. 14, see

Assessment of Dr. Lucero Document 8-4 p. 30-33.

## STANDARD OF REVIEW

A district court abuses its discretion if its decision rests on an erroneous legal

conclusion or lacks a rational basis in the evidence of record. *Wellington v. Daza*, 795

Fed. Appx. 605, 608 (10th Cir. 2020). Under the abuse-of-discretion standard, this Court

reviews "factual findings for clear error and . . . conclusions of law de novo." *Fish v.*

*Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). *Wellington*, 795 Fed. Appx. at 608.

**MR. WRIGHT MEETS THE STANDARDS FOR PRELIMINARY INJUNCTION.**

The Americans with Disabilities Act (ADA) expressly authorizes injunctive relief as an appropriate remedy to acts of discrimination against individuals with disabilities. 42 U.S.C. § 12188(a)(1). In deciding whether to issue a preliminary injunction under F.R.C.P. 65, a court must determine whether the movant has shown: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). "When seeking a disfavored injunction, the movant 'must make a strong showing' both on the likelihood of success on the merits and on the balance of the harms." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883-84 (10th Cir. 2021). As will be discussed below, Mr. Wright satisfies all four factors.

Title III of the ADA provides, in relevant part, that an entity offering "examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189; *Berger v. Nat'l Bd. of Med. Examiners*, 2019 U.S. Dist. LEXIS 145666 **54-55. Mr. Wright must show (1) he is disabled; (2) his requests for accommodation are reasonable; and (3) that those requests were denied. The NBME disputes only that Mr.

Wright has a substantial limitation of a major life activity and therefore that he has a disability.

Under the ADA, individuals who are disabled are entitled to reasonable accommodations. 42 U.S.C. § 12189. To be classified as "disabled" under the ADA, an individual must establish "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Learning, reading, concentrating, and thinking are major life activities. 28 C.F.R. § 36.105(c)(1)(i). Order Document 15 p. 4.

The definition of impairment includes "specific learning disability," listing "other specific learning disabilities" and "Attention Deficit Hyperactivity Disorder." 28 C.F.R. § 36.105(b)(1)(ii), (b)(2). According to the district court, Mr. Wright has supplied evidence sufficient to show that he likely has a learning disability that can, in some cases, substantially limit a major life activity. Order Document 15 p. 4.

The Tenth Circuit has noted that a "learning disability alone does not necessarily trigger the protections of the Americans with Disabilities Act." *J.H. v. Bernalillo Cty.*, 806 F.3d 1255, 1261 n.4 (10th Cir. 2015). "The focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve." 29 C.F.R. § 1630.2(j)(4). The "term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). And per the DOJ but contrary to *Bernalillo Cty*:

> The primary object of attention in cases brought under title III of the ADA should be whether **public accommodations** have complied with their obligations and whether discrimination has occurred, not the extent to which an individual's

impairment  substantially limits a  major life activity. Accordingly, the threshold issue of whether an impairment  substantially limits a  major life activity should not demand extensive analysis.

Id. at (j)(1)(ii).

As the agency directed by Congress to issue implementing regulations, see 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, § 12206(c), and to enforce Title III in court, § 12188(b), the Department's views are entitled to deference. *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998), citing to see *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 at 844 (1984). the well-reasoned views of the agencies implementing a statute "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Bragdon* 524 U.S. at 641 citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-140 (1944).

Nonetheless, when assessing the substantial quality of a limitation, it must be "as compared to most people in the general population." 28 C.F.R. § 36.105(d)(1)(v). The proper comparison is to "the general population, rather than to persons of elite ability or unusual experience." *George Washington Univ. School of Medicine and Health Sciences*, 508 F.3d 1097, 1100-01 (D.C. Cir. 2007).

**THE PURPOSE OF THE ADA, IN RELATION TO TESTING ACCOMMODATIONS, IS TO ENSURE THAT THE EXAM ACCURATELY REFLECTS THE INDIVIDUAL'S KNOWLEDGE.**

Title III of the ADA requires private entities, like the NBME that administer

standardized examinations such as the USMLE Step 3, do so in a "place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42. U.S.C. § 12189. The purpose of the ADA is to guarantee that those with disabilities are not disadvantaged and "to place those with disabilities on equal footing" with others. See, *Rush v. National Board of Medical Examiners*, 268 F.Supp.2d 673, 677 (N.D. Texas 2003); *Agranoff v. Law School Admission Council*, 97 F.Supp.2d 86, 87 (D.Mass. 1999). The regulations implemented in accordance with the ADA provide that an examination is administered to best ensure that, "the examination result accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's [disability]" 28 C.F.R. § 36.309(b)(1)(i). See *Enyart v Nat'l. Conf. of Bar Exam., Inc.*, 630 F.3d 1153, 1161 (9th Cir. 2011); *Bonnette v. District of Columbia Court of Appeals*, 796 F.Supp.2d 164, 180 (D.D.C. 2011); *Jones v. National Conference of Bar Examiners*, 801 F.Supp.2d 270, FN 5 (D. Vt. 2011). One possible modification to an examination, such as the USMLE Step 3 test, is to "change the length of time permitted for completion of the examination." 29 C.F.R. § 36.309(b)(2). In fact, extended time is an accommodation that the NBME offers to test takers. (see https://www.usmle.org/test-accommodations/requesting-accommodations.html) (site last visited 10/18/2021). Title III of the ADA also prohibits discrimination by testing entities, such as the NBME, on the basis of disability. Such an entity engages in an impermissible act of discrimination when it fails to provide "reasonable accommodations to known physical or mental limitations" in connection with testing. 42 U.S.C. § 12112(b)(5)(A).

**MR. WRIGHT IS LIKELY TO SUCCEED ON THE MERITS BECAUSE MR. WRIGHT IS A PERSON WITH DISABILITIES UNDER THE ADA.**

An individual is disabled within the meaning of the ADA if that individual is affected by "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Mr. Wright's updated comprehensive assessment report of Dr. Terri Lucero, Ph.D. reflects that he has a specific learning disorder, ADHD, and is significantly limited in his ability to read, particularly under timed conditions. Assessments of Dr. Lucero Document 8-4 p. 14, 29-31. Mr. Wright is substantially impaired in the major life activity of reading, reading under timed conditions, cognitive processing speed, and concentration, which individually and collectively impair his ability to take the USMLE Step 3 test under standard timed conditions. Id.

The term "substantially limits" is to be construed broadly in favor of expansive coverage. Accordingly, "substantially limits" is not meant to be a demanding standard. 28 C.F.R. § 35.105(d)(1)(i). The ADA regulations provide that in determining whether an individual is substantially limited, it may be useful to consider, as compared to most people in the general population, the condition, manner, and duration in which the person performs the major life activity. 28 C.F.R. § 36.105(d)(3)(i).

Mr. Wright's declaration describes in detail the difficulties he has encountered throughout his academic career as a result of his impairments, from his elementary school years through the present. Mr. Wright Declaration Document 8-2 p. 4-

13. Mr. Wright has had two evaluations by Dr. Terri Lucero, Ph.D., identifying substantial limitations of reading, reading under timed conditions, concentration, and processing of information through reading under timed conditions. Assessments of Dr. Lucero Document 804 p. 1-32.  Additionally, Mr. Wright was approved by the University of Denver for extra time for testing. Declaration of Mr. Wright Document 8-2 p. 25.

The ADA effectively mandates that the NBME provide accommodations based on the recommendations from professionals, such as Dr. Lucero, who has provided two first-hand in-person evaluations of Mr. Wright in 2017 and 2021. Assessments of Dr. Lucero Document 8-4 p. 1, 17. The ADA's regulatory guidance provides that testing entities should accept without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of an applicant that supports the need for the modifications, accommodations, or aid requested. See 28 C.F.R. § pt. 36, app. A, at 782-784. "This is particularly important in the learning disabilities context, where proper diagnosis requires face-to-face evaluation." 28 C.F.R. Part 36.

The guidance further explains that, "[r]eports from experts who have personal familiarity with the candidates should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 784. See also *D'Amico v. N.Y. State Bd. Of Law Examiners*, 813 F. Supp. 217, 223 (W.D.N.Y. 1993).

Dr. Lucero conducted two extensive evaluations of Mr. Wright, which included her own observations and administration of various assessments. Based on these

evaluations she reported that Mr. Wright is a person with disabilities and recommended several accommodations including 50% extended time on tests. Dr. Lucero's recommendations under the regulatory guidance is to be given precedence over the opinions of NBME's evaluators and consultants who conducted only a paper review. Assessment of Dr. Murphy Document 11-32 p. 1-5, Assessment of Dr. Brassard Document 11-29 p. 1-7.

Moreover, pursuant to the ADA, Mr. Wright's use of accommodations during his post-secondary education are to be accorded considerable weight when making accommodation determinations. 28 C.F.R. §36.309(b)(1)(v). Mr. Wright received approval for extended time on tests from the University of Denver. Declaration of Mr. Wright Document 8-2 p. 25.

The accommodations of extended time, a distraction free environment, and extended breaks ameliorate the nature of Mr. Wright's impairments, including but not limited to slow reading, impaired reading comprehension, slow processing speed and diminished concentration. Assessment of Dr. Lucero Document 8-4 p. 29-32. The significant impairments individually and collectively create a barrier that interferes with Mr. Wright's ability to attend to and read through reading passages such as those found on multiple choice questions on the USMLE Step 3 test. Mr. Wright's experience in taking the USMLE Step 3 reflects that due to impairments, he was unable to effectively read, digest, and respond to questions in the time limit set for the exam, resulting in three failures. Declaration of Mr. Wright Document 8-2 p. 21, 28. The inability to complete substantial portions of the USMLE Step 3 is tantamount to a denial of access to the exam.

Moreover, if Mr. Wright is unable to complete the reading in a timed manner on the

USMLE Step 3, the Colorado Medical Board would not be in a position to make a proper

conclusion about his application for licensure.

Many students with a "twice exceptional" profile are unidentified because their

areas of strength and weakness move them toward average performance and they appear

to be in need of neither gifted nor special education services." Per Dr. Lucero,

"In Twice Exceptional (2e) individuals, who are gifted and also have underlying learning
impairments, their gifts and challenges often mask each other. Individuals like Mr.
Wright can fall through the cracks of the traditional academic system and are not always
seen as needing accommodations or interventions. These issues were likely not identified
in childhood and remained unidentified for so many years because Mr. Wright has
advanced cognitive abilities and a strong work ethic and motivation to succeed at his goal
of becoming a physician, which have helped him to compensate and persist." Assessment
of Dr. Lucero Document 8-4 p. 14.

The court below impermissibly places its emphasis on Mr. Wright's achievements,

noting that "courts have relied on academic performance to determine whether an

individual is disabled under the ADA," Order Document 15 p. 9. However, the Court's

focus that, "Mr. Wright has had a history of impressive academic success with average to

slightly below average performances on standardized tests as compared to more

competitive groups," with a litany of accomplishments, utilizes the incorrect legal

standard. Id. The Court must consider the individual's limitations, and not mitigators 28

C.F.R. § 36.105(d)(1)(viii). Critically, through its focus on Mr. Wright's success, it also

ignores the mandatory consideration of his in-person assessor Dr. Lucero.

The Court opined:

Mr. Wright has a history of proficient test scores. He has demonstrated an ability
to do well in school, get through college, obtain a master's degree, and be

admitted to and graduate from medical school. Every one of these accomplishments is something that most people do not do. It is difficult to argue that someone with those accomplishments, predominately achieved without accommodations, is disabled compared to the average person. It is admirable that Mr. Wright has been able to achieve so much despite a learning impairment. But that does not change the legal standard. Order Document 15 p. 11.

However, under this standard, no individual could have a disability that was missed by early education providers, go on to accomplish high levels of academic achievement, and need an accommodation. Moreover, the Court views accommodations for such individuals as gaining an unfair advantage rather than evening the playing field. An accommodation provided to address substantial limitations, though discovered later in life and through the demands of standardized testing for medical licensure, nonetheless are required by the ADA. Mr. Wright seeks not a passing score from the court, but a chance to demonstrate his medical knowledge so that he may begin his medical career. The Court's singular focus on Mr. Wright's achievements without accommodation avoid the requirements of the law and are an abuse of discretion.

The Court appropriately agreed that "Dr. Lucero's assessments are likely sufficient to establish that Mr. Wright has a learning impairment and that the accommodations he seeks would improve his chances of passing the Step 3 exam." Order Document 15 p. 16. However, the Court erred as a matter of law when it stated that "the Court cannot defer to her judgment that his condition substantially limits his ability to read, read under timed conditions, cognitively process, or concentrate in comparison to the population at large." Id. First, the clearly stated direction to defer to in-person assessors by the DOJ, the agency charged with enforcing the ADA, demands such

18

deference as a matter of law, and second, there is no rational basis for discerning that Dr. Lucero's opinions were anything but medically sound and supported by testing. The Court's determined focus away from Dr. Lucero is an abuse of discretion. Per the DOJ:

"Reports from qualified professionals who have evaluated the candidate should take precedence over reports from testing entity reviewers who have never conducted the requisite assessment of the candidate for diagnosis and treatment. This is especially important for individuals with learning disabilities because face-to-face interaction is a critical component of an accurate evaluation, diagnosis, and determination of appropriate testing accommodations." U.S. D.O.J. ADA Testing Accommodations technical assistance, U.S. D.O.J. ADA Testing Accommodations technical assistance, https://www.ada.gov/regs2014/testing_accommodations.html site last visited 10/18/2021).

Reading is a major life activity under the ADA. *Jenkins v. Nat'l Bd. of Med. Examiners*, 2009 U.S. App. LEXIS 2660, 2009 WL 331638, at *2 (6th Cir. Feb. 11, 2009). Specific learning disorders, dyslexia and ADHD are considered impairments under the ADA. 28 C.F.R. §§ 36.105(b)(1)(ii), (2). The evidence shows that Mr. Wright has impairments in reading fluency, processing speed, and attention which substantially limit the major life activity of reading as compared to most people in the general population. Assessment of Dr. Lucero Document 8-4 p. 24, 25, 29-31.

In determining whether an individual is substantially limited, the Court must compare an individual to those in the general population rather than "an academic peer group, or, in the case of standardized tests, to other test-takers who are not representative of the general population." *Bibber v. Nat'l Bd. of Osteopathic Med. Exam'r, Inc.*, 2016 U.S. Dist. LEXIS 48181, 2016 WL 1404157, at *6 (E.D. Pa. 2016).

The DOJ heavily favors an individualized assessment or evidence that a "qualified professional has individually and personally evaluated the candidate as opposed to simply

considering scores from a review of documents." *Berger*, 2019 U.S. Dist. LEXIS 145666 at 58 citing *Bibber*, 2009 U.S. App. LEXIS 2660, 2016 WL 1404157, at *6. It also states that this need for an individualized evaluation is "particularly important in the learning disabilities context, where proper diagnosis requires face-to-face evaluation" and that "[r]eports from experts who have personal familiarity with the candidate should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate. . . ." *Id.*

The NBME agrees that it has the obligation to make an independent assessment of Mr. Wright's request for accommodation on the USMLE. However, a paper review of Mr. Wright's own face-to-face assessor Dr. Lucero is inadequate to meet this duty. Moreover, in not crediting Mr. Wright's own assessor Dr. Lucero, the NBME argues that it need not follow DOJ guidance that puts flesh on the bones of the ADA and its regulations. The NBME's argument fails because DOJ guidance emphasizing the pre-eminence of the in-person assessment is consistent with the statute and regulation.

**THE NBME CONSULTANT CONTRADICTS THE NBME'S ON-LINE GUIDANCE FOR LEARNING DISABILITY ASSESSMENT.**

The NBME relied on Marla Brassard, a psychologist who conducted a purely paper review and reported findings inconsistent with the record. Critically, at page 4 of her report she finds that "On every single measure of reading administered, he is solidly average, and, in a few instances, above average." Dr. Brassard review Document 11-29 p. 5. This flatly ignores the WAIT-4 test showing Mr. Wright's reading accuracy at 25%, and oral reading fluency at 30%; the Nelson Denny Reading test resulting in a reading

rate of 3 percent in comparison with his peers, and in the 12th percentile when under a standard time limit. Assessment of Dr. Lucero Document 8-4 p. 20-25, 30. Indeed, the NBME's own guidelines about what documentation should be provided in support of a testing accommodation request involving learning disabilities demands, "Data and information from a comprehensive battery of standardized, norm-referenced tests and measures used to assess the individual's cognitive and academic functioning." https://www.usmle.org/step-exams/test-accommodations/guidelines (site last visited 10/18/2021). According to NBME's policy "The Nelson-Denny Reading Test (NDRT) and Wide Range Achievement Test (WRAT) are not comprehensive diagnostic measures of achievement and therefore neither is considered acceptable *if used as the sole measure of reading ability or academic skills*." Id. (emphasis added). Mr. Wright's assessor Dr. Lucero complied with this direction, and used a battery of tests including both of these. Assessment of Dr. Lucero Document 8-4 p. 17. The NBME's naming and approval of these tests, when not the sole measure, demonstrates the District Court's error in disregarding these two tests as unrepresentative of the general population. Order Document 15 p. 5, 10.  Moreover, the NBME's own guidelines function as a waiver that the tests, when not the sole measure, are unreliable for comparison purposes. Furthermore, contrary to the District Court's conclusion that the testing results compared Mr. Wright to "future doctors," NBME's paper-only reviewers stated that the test showed his performance as compared to "college educated peers". Id.

Although there is no record citation in the opinion below, the court's statement that the NDRT compared Mr. Wright to "future doctors" appears to be drawn from Dr.

Brassard's letter of 04/10/21. Dr. Brassard review Document 11-29 p.1-5. Yet in that letter, Dr. Brassard never states that the NDRT compared Mr. Wright to medical school students.  Rather, she indicated that the NDRT scale score (referred to on the original chart laying out Mr. Wright's scores as "standard scores") is normed to college students, a very different group. Dr. Brassard review Document 11-29 p. 4. Further, Dr. Brassard's own words show that her analysis of Mr. Wright's capabilities fails to adhere to the principles for applying the ADA set out by the Department of Justice.  For example, in her letter, Dr. Brassard states: "On the vocabulary test he earned a score of 247 which is almost a perfect score for time to vocabulary. His timed comprehension score of 207 is solidly average even though it is at the 12th percentile for college graduates, and the total score of 227 is above average."  Id. Dr. Brassar's analysis improperly collapses Mr. Wright's scores on two different capabilities (vocabulary and comprehension - one where Mr. Wright excels, and one where he has a substantial impairment) and then uses the aggregate to argue that Mr. Wright has no impairment.  This approach contravenes the principles set out by the Department of Justice for interpreting the ADA: an undemanding inquiry, deferring to the in-person assessor's results, without focusing on mitigating measures.

Further, Ms. Brassard's statement that Mr. Wright's "timed comprehension score of 207 is solidly average even though it is at the 12th percentile for college graduates" misses the point. Id. On the one hand, Mr. Wright's score on the vocabulary test (where Mr. Wright does not suffer from impairment), remained the same, with a score of 247 (in the 74th percentile) on both the regular time and extended time tests. In contrast, on the

reading comprehension test (which measured his impaired reading abilities), his regular time score of 227 (in the 38th percentile) shot up to a 247 (68th percentile) on the Extended Time score.  Stripped of the misleading aggregation of scores, the very results cited by Ms. Brassard clearly show the impact of Mr. Wright's impairment on his test results.

## MR. WRIGHT IS BOTH SUBSTANTIALLY LIMITED AND WELL—QUALIFIED.

In addition to Dr. Lucero's recognition of his giftedness, Mr. Wright has received positive feedback from his clerkships and clinical rotations, including, "well prepared", "solid fund of knowledge", "hard working and bright", "exemplary work ethic", "advanced skills in assessment and management", and "solid performer in all aspects." Preceptor review Document 8-4 p. 70. Moreover, according to Mr. Wright's Medical School Senior Associate Dean, "those who have trained Mr. Wright believe he will become a **highly qualified** physician." Dean review Document 8-4 p. 71. (emphasis in original). The NBME also relies on the opinion of Kevin Murphy, Ph.D., who, like Dr. Brassard conducted only a paper review and likewise found no diagnosis of learning disability or ADHD and no justification for accommodation. Dr. Murphy specializes in ADHD (and not reading or learning disabilities). Dr. Murphy review Document 11-32 p 1-7. According to Dr. Murphy, "if someone can compensate for their symptoms so successfully and for so long without any extraordinary interventions beyond hard work and concerted effort, that person is not likely to be considered disabled under the ADA's definition." Dr. Murphy review Document 11-32 p 1-7. This is contrary to the

requirements of the ADA, which prohibits an assessor from holding prior success against a participant, whether accomplished through mitigation or other compensation. See, DOJ Guidance on Regulations to Implement ADA Amendments Act of 2008, 81 FR 53204-01, 2016 WL 4210327, at *53237 (2016). "A definition of disability based on outcomes alone, particularly in the context of learning disabilities, would prevent a court from finding a disability in the case of any individual . . . who is extremely bright and hardworking, and who uses alternative routes to achieve academic success," a result that would be inconsistent with the goals of the ADA. *Bartlett v. New York State Bd. of Law Examiners*, 2001 U.S. Dist. LEXIS 11926, 2001 WL 930792, at *37 (S.D.N.Y. 2001).

Under the ADA regulations, the Court must consider the condition and manner under which the individual performs the major life activity, as well as the duration of time it takes to perform such activity, in determining whether a person has a disability under the ADA. 29 C.F.R. § 1630.2(j)(4). Mr. Wright is limited in reading ability, per Dr. Lucero's assessment and his own declaration, Declaration of Mr. Wright Document 8-2 p. 21, 28. And he did not seek assessment for and in fact hid his reading difficulties, because he "was a child trying to hide from the associated feelings of embarrassment that my now diagnosed SLD, with Impairment in Reading (deficits in reading fluency/rate and reading comprehension) was causing." Declaration of Mr. Wright Document 8-2 p. 13.

The NBME's failure to recognize what Dr. Lucero characterized as Mr. Wright's twice exceptional learning profile is apparent in their letter of June 28, 2021 NBME denial Document 8-4 p. 92.  This letter stated:  "Your Average range 2020 NDRT timed

Comprehension is quite consistent with all of your other Average range performances on

the Wechsler Individual Achievement Test, (WIAT-III and WIAT-IV) reading tasks and

your Gray Oral Reading Test, 5th Edition (GORT-5) oral reading rate, accuracy, fluency,

and comprehension documented since 2017. Overall, these data do not demonstrate that

standard time conditions are a barrier to your access to the USMLE." Id. Yet Mr.

Wright's scores do not show "average range performances." Rather, they show results

typical of the twice exceptional learner, ranging from the 27th percentile (on the Wait III

Expressive vocabulary test reported in 2017, p. NN 11) to the 93rd percentile on written

expression in the 2017 report. Assessment of Dr. Lucero Document 8-4 p. 11).  In the

2021 results, his scores ranged from the 98th percentile in figure recall on the RBANS test

and reflected in the 2020 report (Assessment of Dr. Lucero Document 8-4 p. 23) to less

than the 25th percentile on the WIAT IV oral reading accuracy test (Assessment of Dr.

Lucero Document 8-4 p. 24).  By collapsing these wildly variable results into the

characterization of "Average range performances," the NBME impermissibly subsumes

the very real evidence presented of Mr. Wright's substantial impairment.

Mr. Wright has met his burden of adducing strong evidence showing that he has

impairments in reading fluency, processing speed, and ADHD which substantially limit

the major life activity of reading as compared to most people in the general population

and is thus "disabled" under the ADA.

## MR. WRIGHT HAS DEMONSTRATED IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF.

Mr. Wright cannot continue with his medical career by participating in a residency

or obtaining a medical license until he passes the USMLE Step 3 exam. A delay in taking the Step 3 exam pending the resolution of this lawsuit would deprive Mr. Wright of the opportunity to practice his chosen profession of medicine, and "[t]he lost opportunity to engage in one's preferred occupation goes beyond monetary deprivation." *Bonnette v. District of Columbia Court of Appeals,* 796 F. Supp. 2d 164, 186 (D. D.C. 2011). See also *Enyart,* 630 F.3d at 1166 (affirming finding of irreparable harm based on the plaintiff's inability to practice law without successfully passing bar examination). These factors establish that Mr. Wright would likely suffer irreparable harm in the absence of a preliminary injunction in this case.

The NBME argued below that Mr. Wright's claim of irreparable harm is speculative, citing to *Mahmood v. Nat'l Bd. of Med. Examiners*, 2012 U.S. Dist. LEXIS 86837, 2012 WL 2368462, at *5 (E.D. Pa. June 21, 2012). Unlike *Mahmood*, where the plaintiff had not graduated medical school, Mr. Wright, at great financial cost and personal investment, has completed each step toward medical licensure but for the USMLE Step 3. Declaration of Mr. Wright Document 8-2 p. 23, 24, 64. He has completed medical school, and participated in a residency, with strong reviews, (he was unable to complete due to that residency terminating his position in the program due to his failure to pass the USMLE Step 3 within a certain time frame). Declaration of Mr. Wright Document 8-2 p. 4, 13.

On July 1, 2021 the NBME reduced the number of times that an examinee may sit for a USMLE Step test to four. This October, 2021 will be Mr. Wright's fourth attempt at the USMLE Step 3 test. https://www.usmle.org/common-questions/attempt-limit (site last

visited 10/18/21). The NBME did not raise this below, though Mr. Wright seeks relief

including accommodations on the 4th attempt (October 2021) *and future attempts if*

*needed*. Consequently, Mr. Wright argues that the NBME has waived any objection to

providing additional test attempts (or at least a 5th and 6th attempt if necessary). However,

the NBME did not agree to permit additional attempts beyond four in a conferral on

10/17/2021. Relatedly, if the Court finds that an injunction requiring testing

accommodations is required by the ADA and such is provided on the fourth attempt, then

the third attempt should not be counted against the total number, as there was a proper

accommodation request made that should be deemed improperly denied. Regardless of

Mr. Wright's available arguments that he should be permitted to take the exam additional

times after the October 22 and 26th, 2021 test, the NBME policy restricting the number of

attempts to four places Mr. Wright in additional imminent irreparable harm.

Critically, if Mr. Wright does not pass the October, 2021 USMLE Step 3 test Mr.

Wright may need an exception from the Colorado Medical Board's timing requirements

under its Rule 100. However, the Medical Board does not provide advisory opinions, and

a request for an exception would only be appropriate once he has passed the USMLE

Step 3 test. There is not now adequate certainty of fact to support an application to the

Medical Board for additional time to successfully complete all USMLE tests.

Mr. Wright needs an accommodation on his October, 2021 test and, if he fails to

pass that exam, for subsequent attempts. Colorado Medical Board Rule 100 provides that

some applicants for licensure will need to take and pass all USMLE tests within a seven-

year period and some within a ten-year period. 3 CCR 713-17:100 17.2(D), (D)(1). If Mr.

Wright takes and passes the October, 2021 USMLE Step 3 test for which he has

registered, he will need to demonstrate to the Medical Board, with his application, that, in

order to avoid requesting an exception to the ten-year requirement, he qualifies for that

period under Board Rule 100.  He will demonstrate that his graduate level coursework in

public health (CU; 2006-2008) and healthcare management/administration (DU; 2019-

2020), in addition to his M.D. (RUSM; 2009-2014), qualify him for that ten-year period.

Declaration of Mr. Wright Document 8-2 p. 12, 24. If Mr. Wright passes the October,

2021 USMLE Step 3 test, and if he demonstrates to the satisfaction of the Medical Board

his qualification for the ten-year period, he will not need an exception to the seven-year

timing requirement.

Further complicating the possible outcomes here, the Board Rule also provides

that an exception to the timing requirements may be granted for good cause. 3 CCR 713-

17:100 17.2(D)(2). Due to the NBME's new policy limiting attempts, Mr. Wright may

not be permitted to retake the exam if he fails to pass it.

Although the timing of testing accommodations is critical to avoiding more

irreparable harm, Mr. Wright's claim of imminent and irreparable harm is not simply due

to the timing in Medical Board Rule 100. Mr. Wright will be irreparably harmed if he is

not accommodated, regardless of the timing, because he has invested enormous time,

effort, funds, and study into proceeding with his career as soon as possible. Declaration

of Mr. Wright Document 8-2 p. 12, 29.

**THE HARM TO DR. WRIGHT OUTWEIGHS SPECULATIVE HARM TO THE NBME.**

The threatened injury to Mr. Wright outweighs any potential harm to NBME. Without an accommodation for his reading disability and ADHD, Mr. Wright risks failing the USMLE Step 3 test a fourth time, difficulty obtaining a new residency, inability to receive a medical license, and an inability to practice his chosen profession. The provision of justified accommodations assures that the USMLE exam is fairly administered, allowing Mr. Wright to demonstrate his knowledge (and thereby protecting the public by ensuring qualification to practice medicine) without penalizing him for the limits to reading speed resulting from his disabilities. Mr. Wright's demonstration of disability and need for accommodation in order to start his medical career, and the irreparable harm that will ensue if he is not accommodated, weigh heavily in favor of an injunction.

**AN INJUNCTION WOULD SERVE THE PUBLIC INTEREST.**

The NBME does not dispute that the public interest is clearly served by granting injunctions that eliminate the type of discrimination targeted by the ADA. The NBME points out that they disagree that this interest is applicable here because they dispute that Mr. Wright is disabled and therefore dispute that he is likely to succeed on the merits of his claim. If the Court finds Mr. Wright disabled under the ADA it should find that the public interest is clearly served by granting this injunction. The NBME points out that the public has an interest in the fair administration of tests. However, Mr. Wright is seeking, through accommodation, the fair administration of the USMLE Step 3. He is not seeking to pass by a lower score than others, or by demonstration of less knowledge than others. In short, requiring Mr. Wright to be accommodated protects him, while requiring Mr.

29

Wright to demonstrate his knowledge on the test protects the public.

## CONCLUSION

Mr. Wright has demonstrated a strong likelihood that he will prevail on the merits and of imminent irreparable harm if no injunction is ordered. He has further demonstrated that he the balance harms and public interest favor a preliminary injunction. Consequently, a preliminary injunction should issue promptly, applying to the USMLE Step 3 set for October 22, and 26, 2021.

WHEREFORE, Mr. Wright requests that the Order denying his emergency motion for preliminary judgment be reversed, that the Emergency Motion be granted, and that the Court issue a preliminary injunction against Defendant-Appellee NBME compelling NBME to provide appropriate testing accommodations to Mr. Wright to include: first, extended time and a half on all portions of testing; second, a separate quiet environment free from typical distractions of standard classroom on all sections of the USMLE Step 3 test, and third, additional, stop-the-clock or extended breaks during testing. The injunction should require the testing accommodations at the October 22, and 26, 2021 sitting and at any subsequent setting if Mr. Wright does not pass the exam at the October 22, and 26, 2021 sitting.

Respectfully Submitted,

_s/  Eric Maxfield          ._
Eric Maxfield
Eric Maxfield Law, LLC
3223 Arapahoe Ave., Suite 300
Boulder, CO 80303

Phone: (303) 502-7849
eric@ericmaxfieldlaw.com


Date:  October 19, 2021

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in the Tenth Circuit rules. It contains 7,998 words.

I hereby certify that the foregoing pleading has been digitally submitted to the Court of Appeals for the Tenth Circuit.

s/ Eric Maxfield

**CERTIFICATE OF SERVICE**

I certify that a true copy of this PRELIMINARY INJUNCTIVE RELIEF ON APPEAL

OF 10/15/21 U.S. DISTRICT COURT DENIAL OF EMERGENCY MOTION FOR

PRELIMINARY INJUNCTION was provided to counsel for Defendant National Board

of Medical Examiners on this 19th day of October, 2021 by electronic service through the

Court's e-filing system and by email to the following addresses:

Robert Burgoyne, Esq.
Lindsey Erin Dunn, Esq.
Perkins Coie, LLP

RBurgoyne@perkinscoie.com
LDunn@perkinscoie.com

*s/ Eric Maxfield*